# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

Criminal No. ELH-02-381

DONTE ROLANDO HARRIS,

*Defendant*.

## MEMORANDUM OPINION

In January 2004, defendant Donte Rolando Harris was sentenced to fifty years of imprisonment for multiple armed bank robberies.[1]  In April 2020, defendant, pro se, moved for compassionate release, pursuant to the First Step Act of 2018 ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i).  ECF 278.  Then, through appointed counsel, defendant filed another motion for compassionate release (ECF 290), with exhibits.  I considered ECF 278 and ECF 290 collectively.  By Memorandum Opinion (ECF 304) and Order of December 30, 2020 (ECF 305), I granted the motion, in part, and reduced defendant's sentence to 30 years of imprisonment.  *See* ECF 306 (Amended Judgment).

---

[1] The case was originally assigned to Judge Benson E. Legg. The case was reassigned to Judge William Nickerson in 2003. On April 15, 2019, after Judge Nickerson retired, the case was reassigned to me.  *See* Docket.

Many of the proceedings in this case took place before the use of electronic filing. The first electronic filing was docketed on December 1, 2009, at ECF 196.  However, I previously reviewed the Chambers files maintained by Judge Legg and Judge Nickerson.  ECF 275 at 1 n.1, ECF 304 at 1 n.1.  Moreover, in connection with earlier motions filed by the defendant, I ordered the official court file from the federal archives and reviewed it.  *Id.*

Dissatisfied with that ruling, defendant has inundated the Court with countless submissions. These include motions docketed at ECF 311[2]; ECF 313; ECF 342; ECF 366; ECF 369; ECF 376; ECF 390; supplements to motions, *see, e.g.*, ECF 316; ECF 340; ECF 353; ECF 388; ECF 389; and letters to the Court, *see, e.g.*, ECF 337; ECF 343; ECF 344; ECF 374; ECF 375; ECF 381; ECF 383; ECF 386; ECF 391; ECF 394; ECF 395; ECF 396; ECF 397. The submissions are largely in pursuit of defendant's request for a further reduction in his sentence, from 30 years to 25 years of imprisonment.[3]

I shall consider ECF 313, ECF 316, ECF 340, ECF 342, ECF 353, ECF 369, ECF 388; ECF 389, and ECF 390 collectively as the "Compassionate Release Motion." And, I shall consider ECF 366 and ECF 376 collectively as the "Amendment 821 Motion."

The Office of the Federal Public Defender ("FPD") has declined to supplement defendant's motion for relief under Amendment 821 (ECF 372) and his motion for compassionate release. ECF 378.

Defendant, who is now 50 years of age, is currently incarcerated at USP Canaan in Pennsylvania. *See Bureau of Prisons Inmate Locator*, https://www.bop.gov/inmateloc/ (search by

---

[2] In ECF 311, Harris requested a thirty-day extension of time to file a motion for reconsideration of the Court's Memorandum Opinion (ECF 304) and Order of December 30, 2020 (ECF 305). Soon after, defendant filed his motion for reconsideration. ECF 313. Therefore, I shall deny ECF 311, as moot.

[3] In 2020, I issued a Memorandum (ECF 275) and Order (ECF 276) addressing several other motions filed by Harris. *See* ECF 261, ECF 270, ECF 273. Harris has also filed a motion to vacate and correct his sentence, pursuant to 28 U.S.C. § 2255. ECF 398. The government recently responded. ECF 401. The post-conviction motion is pending and is not addressed in this Memorandum Opinion.

BOP Register Number 37473-083) (last accessed May 21, 2025). He has been incarcerated since August 2002, and has a projected release date of November 10, 2031. *See id.*[4]

No hearing is necessary to resolve the motions. For the reasons that follow, I shall grant the Compassionate Release Motion, in part. In particular, I shall reduce Harris's sentence by twelve months, from a total of thirty years to twenty-nine years of incarceration.

## I.    Factual and Procedural Background[5]

On January 23, 2003, Harris and four codefendants were charged in a twenty-three count Second Superseding Indictment. *See* ECF 297-3. In particular, Harris was charged with conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371; bank robbery, in violation of 18 U.S.C. § 2113(a), (d) & (f); aiding and abetting, in violation of 18 U.S.C. § 2; and using, carrying, brandishing and possessing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c).

Harris entered a guilty plea on March 24, 2003, pursuant to a Plea Agreement. *See* ECF 297-4 (Presentence Report, or "PSR"), at 3; *see also* Docket. Specifically, he pleaded guilty to conspiracy to commit bank robbery (Count One); bank robbery on January 11, 2002 (Count Two); and brandishing a firearm in furtherance of a crime of violence (Count Three). *Id.* Count Three specifically referenced the robbery charged in Count Two as the pertinent "crime of violence." ECF 297-3 at 6.

---

[4] Harris's sentence in this case and his sentence in 2004 in a case in the U.S. District Court for the Western District of Virginia were aggregated to a combined sentence of 32 years and 2 months. *See United States v. Harris*, No. 3:03-CR-00056, 2021 WL 388441, at *1 (W.D. Va. Feb. 3, 2021). Therefore, defendant's current release date includes defendant's 27-month sentence in the Virginia case for conspiracy to escape federal custody.

[5] I incorporate here by reference the procedural history and factual summary set forth in the Court's Memorandum of March 2, 2020 (ECF 275) and its Memorandum Opinion of December 30, 2020 (ECF 304).

In the Plea Agreement, the parties agreed to a total sentence of 25 years of imprisonment. ECF 297-4, ¶ 4. Sentencing was set for June 23, 2003. *See id.* at 1. However, on April 15, 2003, Harris sent a letter to Judge Benson Legg, to whom the case was then assigned, expressing his desire to withdraw his guilty plea. ECF 75. A new lawyer was appointed for Harris and, following a hearing at which Harris was represented by his new lawyer, Judge Legg allowed Harris to withdraw his guilty plea. ECF 112.

Thereafter, Harris proceeded to a jury trial, beginning on January 5, 2004, at which Judge William Nickerson presided. *See* Docket. During the first week of trial, the government presented more than forty witnesses. Then, Harris again expressed interest in entering a plea of guilty.

Harris entered a second plea of guilty on January 12, 2004. According to the Judgment (ECF 122), Harris pled guilty to Counts Two, Three, Four, Five, Six, Eight, Ten, Twelve, Fourteen, Sixteen, Eighteen, Twenty, and Twenty-Two of the Second Superseding Indictment. Counts Three and Five charged using, carrying, and brandishing a firearm on January 11, 2002 and February 12, 2002, respectively, during and in relation to a crime of violence. The remaining counts charged bank robbery and aiding and abetting. The robberies occurred between January 11, 2002 and July 29, 2002. Notably, the parties stipulated to a total sentence of fifty years of imprisonment, pursuant to Fed. R. Crim. P. 11(c)(1)(C). ECF 297 at 2.[6]

By the time of the second guilty plea, and in earlier anticipation of sentencing on June 23, 2003, with respect to the defendant's first guilty plea, defendant's Presentence Report (ECF 297-4) had already been prepared. Harris elected to proceed directly to sentencing. Harris, who was born in November 1974, was 29 years of age at the time of sentencing. ECF 297-4 at 1. He reported that he was in good health. *Id.* ¶ 153.

---

[6] The Court is unaware of a second written plea agreement. *See* ECF 393, ¶¶ 5, 7.

The PSR included calculations under the U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines") for Counts One, Two, and Three, and took into account the stipulated conduct of other bank robberies committed by defendant on February 12, 2002; March 11, 2002; March 29, 2002; May 14, 2002; May 24, 2002; May 28, 2002; June 27, 2002; July 3, 2002; July 15, 2002; and July 29, 2002. *See id.* ¶¶ 27–99.

According to the PSR, Harris had a combined adjusted offense level of 32 for Counts One and Two. *Id.* ¶ 115; *see id.* ¶¶ 101–114. Further, the PSR indicated that defendant qualified as a career offender under U.S.S.G. § 4B1.1, based on three prior convictions for crimes of violence. *Id.* ¶ 118. In particular, the predicate offenses were two burglary convictions and one daytime housebreaking conviction. *Id.*[7] As a result, under U.S.S.G. § 4B1.1, Harris had an offense level of 34 for Counts One and Two. *Id.* Curiously, the PSR did not include any deductions under U.S.S.G. § 3E1.1 for acceptance of responsibility. *Id.* ¶ 116. As to Count Three, the Guidelines corresponded to the mandatory minimum term of imprisonment of seven years, consecutive to any other sentence. *Id.* ¶ 119; *see* U.S.S.G. §§ 3D1.2–3D1.5; § 5G1.2(a).

In contrast with the PSR (ECF 297-4), the Statement of Reasons (ECF 402)[8] reflects a final offense level of 32, not 34, for the robbery offenses. It also reflects a criminal history category of VI.

---

[7] In ECF 304, I stated that, if sentenced today, defendant would no longer qualify as a career offender. *Id.* at 25, 27.

[8] The Docket has an entry for the Judgment at ECF 122. But, the Judgment was not previously accessible electronically. Therefore, I sent the Chambers copy of the Judgment for docketing on June 17, 2025, so that the Judgment is now electronically available, at the original docket entry location. And, on the same date, I submitted for docketing the Statement of Reasons in the Chambers file, as it was not previously docketed. *See* ECF 402 (docketed 6/20/25).

I have reviewed the Chambers file of Judge Nickerson. It contains what appears to be preparation notes for Harris's sentencing. It is clear from the notes that Judge Nickerson regarded Harris as a career offender, with a total offense level of 34 for the robbery offenses. However, Judge Nickerson deducted two points for acceptance of responsibility, which resulted in a final offense level of 32. This is consistent with the Statement of Reasons.

The PSR also recounted Harris's criminal history. According to the PSR, Harris was convicted as an adult on two occasions in 1992, when he was seventeen years of age. ECF 297-4, ¶¶ 122, 123. In particular, he was convicted of theft and daytime housebreaking, for which he was sentenced to one year of incarceration and to fifteen months of imprisonment, respectively. *Id.* In December 1994, defendant was convicted of "Burglary-Intent to Steal-Night," committed on September 2, 1994, for which he received an eight-year sentence, with all but eighteen months suspended. *Id.* ¶ 124. In January 1995, Harris was again found guilty of Burglary-Intent to Steal-Night, for an offense committed in October 1994. *Id.* ¶ 125. He was sentenced to eight years' imprisonment, apparently concurrent, with all but eighteen months suspended. *Id.* He violated his probation for the burglary offenses referenced in ¶¶ 124 and 125 and, on November 1, 1995, he received concurrent sentences of five years' incarceration, but consecutive to any outstanding sentence. *Id.* Then, in 1996, Harris was convicted of unauthorized use and malicious destruction. *Id.* ¶ 126. He received a total sentence of five and a half years of imprisonment, consecutive to the sentence imposed for the offense in ¶ 124. Harris was paroled in 2000. *Id.* ¶¶ 124, 125.

Defendant's prior criminal convictions resulted in a total score of fourteen criminal history points. *Id.* ¶ 127. This equated to a criminal history category of VI. *See* U.S.S.G. ch. 5, pt. A. Two points were added, pursuant to U.S.S.G. § 4A1.1(d), because the underlying bank robbery offenses were committed while defendant was on parole. ECF 297-4, ¶ 128. And, one point was

added under § 4A1.1(d) because the underlying offenses were committed less than two years after Harris was released from custody. *Id.* ¶ 129. Thus, Harris had a total of seventeen criminal history points. *Id.* ¶ 130. Again, this equated to a criminal history category of VI. *Id.*[9] Alternatively, as a result of defendant's status as a career offender, he had a Criminal History Category of VI. *Id.* ¶ 131.

As to Counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, defendant's Guidelines called for a sentence ranging from 210 to 262 months of imprisonment. And, Counts Three and Five required mandatory, consecutive sentences of seven years and twenty-five years, respectively.

Judge Nickerson sentenced Harris to concurrent terms of eighteen years for the robbery offenses (Counts Two, Four, Six, Eight, Ten, Twelve Fourteen, Sixteen, Eighteen, Twenty, and Twenty-Two). And, as required by statute, Judge Nickerson sentenced Harris to a mandatory, consecutive sentence of seven years of imprisonment for Count Three, and a mandatory, consecutive sentence of twenty-five years of imprisonment for Count Five. Thus, the Court sentenced Harris to a total term of fifty years of imprisonment. ECF 122 (Judgment). Despite the length of the sentence, Judge Nickerson indicated that the Plea Agreement was "very favorable" to Mr. Harris, in light of "the overwhelming evidence against him and the even longer sentence that would be imposed had he been convicted at trial." ECF 156 (Nickerson post-conviction opinion), at 2 (citing Transcript of January 12, 2004, at 19).

Harris initially sought post-conviction relief under 28 U.S.C. § 2255, filed on January 18, 2005, and supplemented on March 10, 2005. *See* ECF 134; ECF 140. In a Memorandum Opinion

---

[9] As discussed, *infra*, if defendant were sentenced today, pursuant to Amendment 821 to the Guidelines, defendant would receive only one "status point." *See* U.S.S.G. § 4A1.1(e). However, whether a defendant has fourteen, sixteen, or seventeen criminal points, the criminal history category is VI.

docketed March 8, 2006 (ECF 156), Judge Nickerson recounted the history of the case. He noted that Harris participated in eleven armed bank robberies in 2002, some of which included the actual or planned abduction of bank employees. By Order of March 8, 2006, Judge Nickerson denied the petition for post-conviction relief. ECF 157.

Defendant filed a second § 2255 motion on November 22, 2006. ECF 172. Judge Nickerson denied it on December 6, 2006. ECF 173; ECF 174. Then, on June 16, 2016, Harris filed a motion seeking relief under Rule 60(b) of the Federal Rules of Civil Procedure. ECF 239. Judge Nickerson regarded that motion as a successive § 2255 petition and dismissed the motion by Memorandum and Order of May 30, 2017. ECF 244; ECF 245.

In 2017, Harris also filed for habeas relief in the Southern District of Indiana. According to the government, relief was denied in that matter. *See* ECF 271 at 1 n.1 (citing Case No. 2:17-CV-00338-JMS-MJZ).

Harris filed a motion for declaratory relief on August 2, 2019, challenging his conviction and sentence. ECF 261. By then, the case had been reassigned to me. And, by Memorandum and Order of March 2, 2020, I construed the motion as an unauthorized, successive § 2255 petition and denied it. ECF 275; ECF 276.

Subsequently, Harris filed a pro se compassionate release motion. ECF 278. Thereafter, through counsel, he filed a "Motion for a Sentence Reduction Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i)." ECF 290. By Memorandum Opinion (ECF 304) and Order (ECF 305) of December 30, 2020, I granted the motions, in part. In particular, I reduced Harris's sentences for the armed bank robbery charges (Counts Two, Four, Six, Eight, Ten, Twelve, Fourteen, Sixteen, Eighteen, Twenty, and Twenty-Two) from eighteen years to sixteen years, concurrent. Harris's consecutive sentence of seven years for Count Three remained unchanged. And, I reduced the

sentence for Count Five from twenty-five years to seven years, consecutive.  In other words, I imposed concurrent terms of sixteen years for the robbery charges and fourteen years, consecutive, for the two § 924(c) convictions. This reduced Harris's total sentence from fifty years to thirty years of incarceration.

Dissatisfied with that ruling, on February 23, 2021, defendant filed a "Motion for Extension to File Alter or Amend Judgment Rule 59(e) F. R. Cv. P."  ECF 311.  Then, on March 10, 2021, Harris filed a "Motion for Reconsideration."  ECF 313.  Among other things, in response to the Court's Memorandum Opinion (ECF 304), Harris provides additional context for why he withdrew his plea agreement.  ECF 313 at 6.  He explains that the plea agreement would have required him to testify against another defendant, which would have placed him in "mortal danger."  *Id.* at 7.

Harris filed a "Supplement for Motion for Reconsideration."  ECF 316.  He complains that his "inmate central file" within the Bureau of Prisons ("BOP") contains the withdrawn plea agreement and related PSR, and he asks for the file to be updated with the correct plea agreement and updated PSR, reflecting that he is not a career offender.  *Id.* at 3, 4.  Thereafter, the Court ordered the government to respond.  ECF 330.  The government filed an opposition to the motions. ECF 334.  Harris replied.  ECF 336.

On August 31, 2021, Harris sent correspondence to the Court requesting the issuance of an amended presentence report.  ECF 337.  On the same day, the Court sent a letter to the BOP regarding correction of Harris's BOP records.  ECF 338.  In the letter, I stated, *id.* at 1, that Harris had sent a letter in which he "asked the Court to adjust his presentence report to reflect that he was erroneously determined to be a Career Offender," which I took "to mean that he seeks a correction of his BOP records."  I further provided the BOP with "a copy of my Memorandum Opinion and Order of December 30, 2020, docketed at ECF 304 and 305" and pointed to the pages where I

concluded that "'Harris was erroneously deemed a Career Offender.'" ECF 338 at 1 (quoting ECF 304 at 27).

In a letter dated September 1, 2021, Harris submitted another "Supplement to Motion for Reconsideration," to which he attached a psychological assessment. ECF 340; ECF 340-1. Then, on September 12, 2021, Harris filed a "Motion for Judgment on the Pleadings," asking the Court to grant his compassionate release motion and to order an amended PSR. ECF 342.

Harris sent additional correspondence to the Court in February 2022. ECF 343; ECF 344. Among other things, he requested an amended PSR and judgment on his motion for reconsideration. ECF 344. Harris also sent correspondence to the Court on March 13, 2023, attaching records showing his completion of educational classes offered by the BOP. ECF 353.

On November 3, 2023, Harris filed a motion under "18 U.S.C. [§] 3582(c)(2) based on the Retroactive amendments to the U.S.S.G. Amendment 821." ECF 366. He also submitted several exhibits. Harris supplemented his motion in a filing docketed on April 29, 2024, detailing information about expunged convictions and requesting an amended PSR with updated offense points and criminal history category. ECF 368.

On May 21, 2024, while ECF 366 remained pending, defendant moved for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF 369. He said, *id.* at 1: "On or about March 26th 2024, petitioner submitted an amended motion under 18 U.S.C. [§] 3582(c)(2), now at this time petitioner is withdrawing that motion as such was not the proper vehical [sic] for petitioner [sic] current intent." Defendant also submitted exhibits.

By Order of June 5, 2024 (ECF 373), I directed the government to respond to ECF 366 and ECF 368 by August 6, 2024. However, the government did not respond. Also on June 5, 2024 (ECF 372), the FPD advised the Court that it did not intend to supplement defendant's motion

under 18 U.S.C. § 3582(c)(2), "based on the retroactive application of Amendment 821." In addition, on August 5, 2024, the Clerk docketed defendant's "Amended 3582(c)(2)." ECF 376.[10]

Thereafter, by Order of August 19, 2024 (ECF 379), I directed the government to respond to ECF 369, due by October 16, 2024. Also on August 19, 2024, the FPD advised that it did not intend to supplement Harris's compassionate release motion. ECF 378.

Harris sent additional correspondence to the Court on June 3, 2024 (ECF 374); July 18, 2024 (ECF 375); August 26, 2024 (ECF 381); August 30, 2024 (ECF 383); and October 16, 2024 (ECF 386). In general, he reiterated the same arguments and inquired about the status of his motions.

Presumably at the direction of the Court, an amended PSR was docketed on August 28, 2024. ECF 380 ("First Amended PSR"). The First Amended PSR removed references to Harris's career offender status. *Compare* ECF 297-4 at 3 *with* ECF 380 at 4. It also removed two criminal history points assigned to defendant for a March 1992 theft conviction, as discussed, *infra*. *See* ECF 380, ¶ 98. And, it showed that defendant had a criminal history score of fifteen points and a criminal history category of VI. *Id.* ¶ 106.

On September 3, 2024, the Court wrote a letter to Mr. Harris, Assistant United States Attorney John Chung, and Federal Public Defender Sapna Mirchiandani. ECF 382. The Court said, in part, *id.* at 1: "There have been a number of relatively recent filings in this case and the state of the docket is a bit confusing." I recounted the pending motions and identified which ones still required responses. *Id.* And, I again directed the government to respond to ECF 366, ECF 376, and ECF 369, due by October 16, 2024. *Id.*

---

[10] Curiously, ECF 376 shows a handwritten date of May 4, 2024. And, according to a stamp on it, the Clerk received it on May 10, 2024. Nevertheless, for reasons unknown to the Court, it was not docketed until August 5, 2024.

The government filed a combined opposition to Harris's motions on October 16, 2024. ECF 385. Harris replied on October 30, 2024. ECF 387. He also filed additional supplements on November 18, 2024 (ECF 388) and December 23, 2024 (ECF 389), the latter of which purported to show exhaustion of BOP administrative remedies. And, in a filing dated December 30, 2024, and docketed on January 3, 2025, Harris filed a "Motion for Modification of an Imposed Term of Imprisonment – 18 U.S.C. 3582(c)(1)(A)(i)."

On January 21, 2025, Harris wrote to the Court requesting an amended PSR. ECF 391. I responded on February 5, 2025 (ECF 392), stating that my review of the First Amended PSR "determined that it did not take into account two changes in the Guidelines that pertain to criminal history points," and it also did not account for all of Harris's convictions. *Id.* at 1. I also asked U.S. Probation ("U.S.P.O.") to "correct the error." *Id.* An amended PSR was docketed on February 14, 2025. ECF 393 ("Second Amended PSR").

The Second Amended PSR (ECF 393) added facts concerning the Indictment and Superseding Indictment, initial jury trial, and defendant's reduction of sentence. *Id.* ¶¶ 1, 2, 5, 6. It also removed the offense conduct provided by the government in the Statement of Facts in the initial Plea Agreement. The Second Amended PSR states: "There was no plea agreement in this case." *Id.* ¶ 5. The PSR adds that "the Probation Office is unaware of the facts provided to the Court during the plea hearing on January 12, 2004." *Id.* ¶ 7. *Compare* ECF 380, ¶¶ 5–10 *with* ECF 393, ¶ 7.

In addition, in contrast to the original PSR (ECF 297-4, ¶ 122), the Second Amended PSR did not assign two points for the defendant's theft conviction in March 1992. ECF 393, ¶ 95. Moreover, the Second Amended PSR removed one status point and one recency point from the criminal history point calculation. *Compare* ECF 380, ¶¶ 104–06 *with* ECF 393, ¶¶ 101–02. As

a result, it shows that defendant had a criminal history score of thirteen points, rather than seventeen points, reflected in the original PSR.  *See* ECF 297-4, ¶ 130; ECF 393, ¶ 102.  But, he remains a criminal history category of VI.  *Id.*

Defendant submitted additional correspondence to the Court, docketed on February 24, 2025 (ECF 394); March 3, 2025 (ECF 395); March 13, 2025 (ECF 396); and March 20, 2025 (ECF 397).  In general, Harris disputes the calculation of the criminal history points in the Second Amended PSR.

Among other things, the government argues that "the proper vehicle for requesting relief from a conviction or sentence is a motion filed pursuant to 28 U.S.C. § 2255," not 18 U.S.C. § 3582.  ECF 385 at 12.  And, even if the Court considers Harris's motion under 18 U.S.C. § 3582, the government contends that Harris "has not established an extraordinary and compelling basis for compassionate release, as he fails to show that his reduced sentence from 2020 is disproportionate. He is now essentially seeking a second bite of the apple, which is not warranted since, as discussed above, this Court already addressed the Petitioner's request to have his sentence reduced, and did so by 20 years."  *Id.* at 13.  Moreover, the government asserts: "There has been no change in the Petitioner's circumstances that show the now-30 year sentence is an usually long sentence, and his request for relief must therefore be denied."  *Id.* at 15.

## II.    Legal Standard

Defendant has moved for reconsideration (ECF 313; ECF 316; ECF 340; ECF 342; ECF 353) of the ruling of this Court issued on December 30, 2020 (ECF 304, ECF 305), by which I reduced defendant's total sentence of fifty years of imprisonment to a total of thirty years of imprisonment.  Defendant has also moved for a reduction in his sentence pursuant to Amendment

821.  ECF 366, ECF 376.  And, defendant has moved for compassionate release.  *See*, *e.g.*, ECF 369; ECF 388; ECF 389; and ECF 390.

### A.    Motion for Reconsideration

Defendant filed a motion for reconsideration on March 10, 2021.  ECF 313.  It pertains to this Court's disposition of his earlier motion for compassionate release.  ECF 278; ECF 290.

Notably, the Fourth Circuit has stated that "the Federal Rules of Civil Procedure do not apply to motions under § 3582 . . . because § 3582 motions—which seek only to alter terms of imprisonment—are criminal in nature."  *United States v. Goodwyn*, 596 F.3d 233, 235 n.* (4th Cir. 2010) (emphasis removed).  And, because "'§ 3582(c) does not prevent prisoners from filing successive motions' for compassionate release," courts should treat a defendant's reconsideration motion "as a new motion for compassionate release."  *United States v. Hedspeth*, 2023 WL 7124547, at *1 (4th Cir. Oct. 30, 2023) (quoting *United States v. Bethea*, 54 F.4th 826, 833 n.2 (4th Cir. 2022)).

Therefore, I will construe ECF 313 and the supplements—ECF 316; ECF 340; ECF 342; and ECF 353—as a renewed motion under 18 U.S.C. § 3582.

### B.    Amendment 821

Section 3582(c)(2) of 18 U.S.C. permits a court to reduce the sentence of a defendant who was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)," if the amendment has been made retroactively applicable, and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission."  *Id.*; *see United States v. Barrett*, 133 F.4th 280 (4th Cir. 2025); *United States v. Moore*, 2024 WL 2828103, at *1 (4th Cir. June 4, 2024) (per curiam); *United States v. Riley*, ELH-13-0608, 2022 WL 9361679, at *5 (D. Md. Oct. 14, 2022)

(citing *Dillon v. United States*, 560 U.S. 817, 826 (2010)); *see also* U.S.S.G. § 1B1.10(a)(2)(B) (providing that a defendant is not eligible for a sentence reduction if the retroactively applicable amendment "does not have the effect of lowering the defendant's applicable guideline range").

The Fourth Circuit has said that district courts must employ a two-step approach in considering 3582(c)(2) motions. *United States v. Peters*, 843 F.3d 572, 574 (4th Cir. 2016); *United States v. Williams*, 808 F.3d 253, 257 (4th Cir. 2015). "First, a court must determine the defendant's eligibility. Section 3582(c)(2) permits a reduction only if (1) the defendant's 'term of imprisonment [was] based on a sentencing range that has subsequently been lowered by the Sentencing Commission,' and (2) the reduction 'is consistent with applicable policy statements issued by the Sentencing Commission.' § 3582(c)(2). Second, the court may grant the authorized reduction 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *Peters*, 843 F.3d at 574 (citing § 3582(c)(2)).[11] "The ultimate decision of '[w]hether to reduce a sentence and to what extent' is committed to the district court's discretion." *Id.*

Amendment 821 to the Guidelines went into effect on November 1, 2023. *Amendment 821*, U.S. SENT'G COMM'N, https://www.ussc.gov/guidelines/amendment/821. It "is a multi-part amendment." *United States v. Gary*, JKB-08-086, 2024 WL 1641007, at *1 (D. Md. Apr. 16, 2024).

Part A of Amendment 821 pertains to criminal history and so called "status points." *Id.* It amended U.S.S.G. § 4A1.1 "by redesignating subsection (d) as subsection (e) and reducing the

---

[11] One policy statement provides that courts may not reduce a sentence "to a term that is less than the minimum of the amended guideline range" unless the defendant's original sentence resulted from a downward departure based upon substantial assistance to government authorities. U.S.S.G. § 1B1.10(b)(2); *see United States v. Dunphy*, 551 F.3d 247, 252 (4th Cir. 2009) (concluding that § 1B1.10 is "a jurisdictional bar to reducing sentences below the range authorized by the Commission").

additional criminal history points assessed to a defendant who committed his offense while under a criminal justice sentence." *Moore*, 2024 WL 2828103, at *1; *see also Barrett*, 133 F.4th at 282-83. "Criminal justice sentence" under the Guidelines includes probation, parole, supervised release, imprisonment, work release or escape status. U.S.S.G. § 4A1.1(e).

Prior to the amendment, under U.S.S.G. § 4A1.1(d), two points were added to a defendant's criminal history score if the defendant committed the underlying offense while under a criminal justice sentence. But, as now codified in § 4A1.1(e), Amendment 821 limits the assignment of such "status points."

In particular, Amendment 821 permits the assignment of only one status point, and then only if a defendant has seven or more criminal history points. *See* U.S.S.G. § 4A1.1(e). In other words, the amendment eliminates any status points for a defendant who "has six or fewer criminal history points." *Id.*; *see also United States v. Law*, DKC-11-489, 2024 WL 3757902, at *1 (D. Md. Aug. 12, 2024) ("Part A . . . eliminated status points altogether for a defendant with six or fewer criminal history points.").

"The Sentencing Commission gave retroactive effect to the amended Guideline . . . beginning on February 1, 2024." *Moore*, 2024 WL 2828103, at *1; *see Barrett*, 133 F.4th at 283. So, under the new provision, U.S.S.G. § 4A1.1(e), only one "status point" is assessed, and only for those with seven or more criminal history points.

Part B of Amendment 821 provides for a decrease of two offense levels if ten conditions are met. *See* U.S.S.G. § 4C1.1(a). They are, *id.*:

> **(1)** the defendant did not receive any criminal history points from Chapter Four, Part A;
>
> **(2)** the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
>
> **(3)** the defendant did not use violence or credible threats of violence in connection with the offense;

**(4)** the offense did not result in death or serious bodily injury;

**(5)** the instant offense of conviction is not a sex offense;

**(6)** the defendant did not personally cause substantial financial hardship;

**(7)** the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

**(8)** the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);

**(9)** the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and

**(10)** the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848[.]

### C.    Compassionate Release

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *Bethea*, 54 F.4th at 831; *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly permitted by statute."  *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

A statutory exception is codified at 18 U.S.C. § 3582, which was first enacted as part of the Sentencing Reform Act of 1984. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). It is commonly termed the "'compassionate release exception.'" *Moody*, 115 F.4th at 310; *see United States v. Osman*, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to as a motion for compassionate release . . . ."). Specifically, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes a court, in its discretion, to reduce a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction,"; "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and the court has considered the factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Crawley*, ___ F.4th ___, 2025 WL 1634789, at *3 (4th Cir. June 10, 2025); *Hargrove*, 30 F.4th at 194.

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion made by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief. *See Bethea*, 54 F.4th at 831; *see, e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP). However, the safety valve of § 3582 languished, because the BOP rarely filed such a motion on an inmate's behalf. As a result, compassionate release was an infrequent occurrence. *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In 2018, with the passage of the First Step Act, *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582. *Malone*, 57 F.4th at 173. In particular, the FSA authorized a court to grant compassionate release "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see also Ferguson*, 55 F.4th at 268; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020). In other words, a federal inmate is now able to file a motion for compassionate release directly with the court, as long as the inmate first exhausts administrative remedies. *See McCoy*, 981 F.3d at 275–76.

However, under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are satisfied. *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831.[12] Specifically, "the district court must conduct a two-step analysis." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024); *see also Bond*, 56 F.4th at 383.

The first step consists of two parts. The court "must determine: (1) whether extraordinary and compelling reasons warrant . . . a [sentence] reduction; and (2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Malone*, 57 F.4th at 173; *see Moody*, 115 F.4th at 310; *Davis*, 99 F.4th at 653; *Bond*, 56 F.4th at 383; *Bethea*,

---

[12] The Fourth Circuit has said that there are two criteria, and that the first criterion consists of two steps. *See, e.g.*, *Malone*, 57 F.4th at 173. More recently, however, in *Crawley*, 2025 WL 1634789, at *3, the Fourth Circuit stated that there are three criteria. Whether the criteria are counted as two or three, the substance is the same.

54 F.4th at 831; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, 142 S. Ct. 383 (2021). If that first step is met, the court then proceeds to the second step.

Under the second step, the court must determine whether release is appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see Moody*, 115 F.4th at 310; *Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647; *Kibble*, 992 F.3d at 330. "Importantly, a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors '[o]nly after' conducting the first step's analysis." *Osman*, 2024 WL 3633573, at *4 (citations omitted) (alteration in *Osman*); *see Malone*, 57 F.4th at 173 (stating that the district court may consider the § 3553(a) sentencing factors only after determining that extraordinary and compelling reasons warrant a sentence reduction and that a reduction is consistent with the Sentencing Commission's policy statements).

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647. Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate release motion." *Bethea*, 54 F.4th at 834; *see United States v. Gutierrez*, 2023 WL 245001, at *5 (4th Cir. Jan. 18, 2023); *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189.

As the Fourth Circuit has recognized, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Davis*, 99 F.4th at 653–54. The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term

of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement"). "[U]ntil recently," that Policy Statement did not apply to motions filed by prisoners. *Davis*, 99 F.4th at 654; *see McCoy*, 981 F.3d at 281. The Policy Statement began: "Upon motion *of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2021) (emphasis added). Interpreting this language, the Fourth Circuit said in *McCoy*, 981 F.3d at 281, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." Therefore, on the basis of that earlier text, the Court held: "When a defendant exercises his . . . right to move for compassionate release on his own behalf, . . . § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *Id.* (citation omitted). As a result, district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citation omitted).

Effective November 1, 2023, U.S.S.G. § 1B1.13 was amended. *See Davis*, 99 F.4th at 654 (citing 88 Fed. Reg. 28254 (May 3, 2023)). The Policy Statement now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2023) (emphasis added). Therefore, the Policy Statement is applicable to defendant-filed motions under § 3582(c)(1)(A). *Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the petitioner's] arguments in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction"). As a result, when a defendant files a motion for compassionate release, a court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions. 18 U.S.C. § 3582(c)(1)(A).

The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

(B) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1) (A) extraordinary and compelling reasons warrant the reduction; or
(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

Section 1B1.13(b) of the Policy Statement is titled "EXTRAORDINARY AND COMPELLING REASONS." It identifies multiple circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. *See* § 1B1.13(b)(1)–(6). These include certain medical circumstances of the defendant, such as a terminal illness, "serious cognitive impairment," a medical condition that requires "specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or the defendant is at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public health emergency . . . .", § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's age, along with other factors, § 1B1.13(b)(2); the defendant's family circumstances, § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, § 1B1.13(b)(4)(A), (B); for a defendant who received an "unusually long sentence" and has served at least 10 years of the sentence, a non-retroactive change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed . . . .",

§ 1B1.13(b)(6); and "any other circumstance or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." § 1B1.13(b)(5).

Section 1B1.13(c) of the Policy Statement is titled "LIMITATION ON CHANGES IN LAW." It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c). "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*; *see Davis*, 99 F.4th at 654.[13]

Section 1B1.13(d) of the Policy Statement concerns rehabilitation of the defendant. It limits the weight a court may assign to a defendant's rehabilitation while serving a sentence. That section provides that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d). "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a

---

[13] In *Concepcion v. United States*, 597 U.S. 481 (2022), the Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500. However, the Court acknowledged that "Congress or the Constitution [may] limit[] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence . . . ." *Id.* at 486. "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements." *Id.* at 495. It follows that, because the Policy Statement is now applicable to prisoner-filed motions for compassionate release, a court may consider intervening changes of law only in the manner that the Policy Statement prescribes.

reduction in the defendant's term of imprisonment is warranted." *Id.* And, § 1B1.13(e) provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction.

Even if a defendant prisoner establishes that extraordinary and compelling reasons warrant relief, a reduced sentence does not necessarily follow. The court must then consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See Dillon*, 560 U.S. at 826–27; *Brown*, 78 F.4th at 128; *United States v. Mangarella*, 57 F.4th 200, 203 (4th Cir. 2023); *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020) (district court must give due consideration to the § 3553(a) factors); *see also United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in exercising its discretion). Notably, the amendments to the Guidelines in November 2023 did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with . . . training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)). As the Fourth Circuit has observed, "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 at 500). The district courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at 656; *see United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021). And, in weighing the § 3553(a) factors, the court may consider the terms of a plea bargain. *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said: "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis." But, "'the record as a whole'" must demonstrate that the judge considered the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).

In particular, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190). And, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132

(criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

"How much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021). For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'" *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*).

In any event, as stated, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190). And, a more detailed explanation may be required if a substantial change in the law creates a disparity between the sentence a defendant actually received and the sentence he would receive, if sentenced under current law. *See Davis*, 99 F.4th at 661; *see* 18 U.S.C. § 3553(a)(6) (directing a court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."); *see Moody*, 115 F.4th at 310 (recognizing that a defendant may not "challenge the validity of a sentence in a compassionate release" motion but explaining that a court may consider whether a defendant's sentence would be shorter "because of changes in law."). In explaining its compassionate release ruling, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors . . . ." *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

*Davis*, 99 F.4th 647, is informative. The Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6). *Id.* at 654–55. And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the

defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range." *Id.* at 661.

According to the *Davis* Court, if the defendant were sentenced under current Guidelines, "it is very likely that [the defendant] would already be out of prison." *Id.*  The Court stated, *id.*: "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'"  *Id.* (quoting 18 U.S.C. § 3553(a)(6)).  It concluded that the district court was obligated to provide a "detailed explanation" of its § 3553(a) analysis, because "[t]his sentence disparity is so stark, and the change in law so substantial."  *Davis*, 99 F.4th at 661 (citing *Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)).

## III.  Discussion

As noted, Harris has submitted more than two dozen fillings.  He advances several arguments, discussed *infra*, in his pursuit of a "further [sentence] reduction of 5 years," which he claims would allow him "to obtain a lesser security institution and a little bit more time to prepare for freedom."  ECF 335 at 4.

### A.  Amendment 821

Pursuant to Amendment 821, Harris requests a one-point reduction in the calculation of his criminal history points.  ECF 366 at 10.  He admits that he "was on Maryland parole" when he committed the underlying offenses in this case.  Therefore, two points were added to the calculation of defendant's criminal history score, pursuant to U.S.S.G. § 4A1.1(d).  *Id.* at 8. According to Harris, these two points should be reduced to one point.  *Id.*; *see* § 4A1.1(e).  Harris requests the amendment of his PSR to reflect this correction, and also to reflect the Court's previous determination that he is not a career offender.  ECF 366 at 9, 10.

Harris later stated that he was withdrawing his motion for relief under 18 U.S.C. § 3582(c)(2). ECF 369 at 1. But, he subsequently filed an amended Amendment 821 motion. ECF 376. Therefore, I will address his request for relief under 18 U.S.C. § 3582(c)(2).

The government argues that, under U.S.S.G. § 1B1.10(a)(2)(B), "a reduction in the defendant's term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2) if the effect does not lower the defendant's applicable guidelines range." ECF 385 at 18. And, it posits that scenario here. *Id*.

Under 18 U.S.C. § 3582(c)(2), a court may reduce a sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)," but only if the reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see also Concepcion*, 597 U.S. at 495 (this provision "expressly cabin[s] district courts' discretion" to reduce a defendant's sentence). Per the Sentencing Guidelines, a reduction is only permissible if "the guideline range applicable to [a] defendant has subsequently been lowered *as a result of a[][retroactive] amendment to the Guidelines Manual.*" U.S.S.G. § 1B1.10(a)(1) (emphasis added).

Notably, defendant's PSR was amended for the second time on February 14, 2025. ECF 393. In the Second Amended PSR, the U.S.P.O. reduced the defendant's status points from two points to one point, under U.S.S.G. § 4A1.1(e). *See* ECF 393, ¶ 101. The recency point was also removed, even though that change is not retroactive. *See* U.S.S.G. § 1B.10(d). The reference to defendant's career offender status was also deleted. And, no points were assigned for defendant's theft offense in March 1992. *See id.* ¶ 95.

As discussed, *infra*, defendant insists that he is entitled to other corrections. He is wrong.

Nevertheless, as indicated, if sentenced today, defendant is correct that he would receive only one status point under U.S.S.G. § 4A1.1(e).  Accounting for all other changes, defendant has a total of thirteen criminal history points, rather than the seventeen set forth in the original PSR. *See* ECF 297-4, ¶¶ 128–30.  And, that is what is reflected in the Second Amended PSR.  *See* ECF 393, ¶ 102.  However, even with thirteen criminal history points, defendant's criminal history category remains the same: VI.  Thus, Amendment 821 has no impact here.  In short, defendant is not eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2).

To the extent that defendant seeks a corrected PSR, he has received the requested relief. But, as noted, the reduction has no bearing on defendant's criminal history category or his Guidelines.

### B.  Compassionate Release

### 1.  Exhaustion

The government argues that the Compassionate Release Motion is not properly before this Court.  Although Harris previously requested compassionate release from the BOP in June 2020, in connection with his prior motion, the government points out that he has not done so with respect to his new motion.  Therefore, the government contends that Harris has not exhausted administrative remedies, as required under the First Step Act.  ECF 385 at 8 n.3; *see* 18 U.S.C. § 3582(c)(1)(A).  But, Harris claims that, as of December 12, 2024, he exhausted his administrative remedies.  ECF 390 at 2.

Harris wrote to the court about his exhaustion of administrative remedies, docketed on December 23, 2024.  ECF 389; *see also* ECF 389-1.  Harris asked the Court "to pardon" his failure to exhaust, and advised that he submitted requests to the Warden in October and November of

2024. *Id.* On November 27, 2024, the Warden denied defendant's request to "correctly score" his criminal history points. ECF 389-1 at 2.

In addition, in a motion docketed on January 3, 2025 (ECF 390), Harris submitted a letter from the Warden dated December 12, 2024. ECF 390-3. The letter, in response to Harris's request for compassionate release, states, in part, *id.* at 2: "A review of your medical records determined you have not been diagnosed with a terminal, incurable disease with a life expectancy of eighteen months or less, you are able to care for your daily needs, and you are not confined to a bed or wheelchair for greater than fifty percent of your waking hours."

I am satisfied that Harris has exhausted his remedies.

### 2. Extraordinary and Compelling Circumstances

### a. Medical Conditions

Harris argues that his medical conditions warrant a further reduction in his sentence. In defendant's Compassionate Release Motion, he details new and exacerbated medical problems following his COVID-19 infection in December 2020, including sharp pains in his kidneys, high blood pressure, and dizzy spells. ECF 313 at 4, 5; *see also* ECF 303.

The government contends that defendant's medical conditions do not constitute an extraordinary and compelling circumstance. ECF 334 at 5. It asserts: "Harris's medical conditions are relative [sic] minor, common, and are being adequately managed by the prison medical system." *Id.* at 8. The government adds, *id.* at 9: "Also unavailing is the defendant's attempt to rely on his claimed conditions combined with fears about the COVID-19 virus to obtain relief. He refused the vaccine. His claimed COVIDlike symptoms are on him, and him alone."

As noted, in a motion dated December 30, 2024, and docketed on January 3, 2025 (ECF 390), Harris "move[d] for immediate release" based on "apparent declining health conditions."

ECF 390 at 2, 3. Harris recounts that he ran out of several of his prescriptions but was unable to order a refill because the institution was on lockdown. *Id.* at 4. When he met with his health service provider, he informed her that he was out of his medication and that he had "been having dizzy spells and minor sharp pains in [his] side," which meant he "knew [his] blood pressure was/is high." *Id.* But, Harris claims that because he did not previously place a refill order, the provider told him she would only provide one week's worth of one of his prescriptions. *Id.*

In addition, Harris claims that his "medical condition has in fact declined as it relates to [his] kidney disease." *Id.* According to Harris, in September 2023, he had an ultrasound performed on his kidneys and bladder. *Id.* at 5. More than a year later, he was told that the findings show his kidney disease "has clearly degenerated since 2020," from stage 2 to stage 3a. *Id.* He claims that this is a result of his worsening "urine chemistry." *Id.*

In support of the submission, Harris included the "Declaration Of Petitioner Donte Rolando Harris," dated December 30, 2024. ECF 390. He complains that he has been denied a full refill of his required medication, has not received his "usual blood and urine sample test in several months," and the BOP facility, as of December 30, 2024, was on lockdown. *Id.* at 11. Harris admits that the current circumstances do not present a "medical emergency," but contends that, "according to [his] lab results, [his] medical circumstances are slowly, but gradually worsening as it relates to [his] kidney functions." *Id.* He asserts that by his release date in 2031, he "may suffer kidney failure and possible . . . death . . . ." *Id.*

Harris also submitted some medical records with his Compassionate Release Motion. *See* ECF 390-4, ECF 390-5. A report of Harris's ultrasound of his kidneys and bladder, performed on September 22, 2023, concludes that there is an "[i]ncrease [in] cortical echogenicity in both kidneys consistent with nonspecific medical renal disease" and there is "[c]oncern for early right

renal atrophy." ECF 390-4 at 1. It also states that there is a "2.3 cm cyst in the left kidney." *Id.* Results of Harris's urine chemistry test show a worsening in the albumin/creatinine ratio from October 2022 to July 2024. *See* ECF 390-5. The report from July 2024 appears to show Harris's "Random mALB Creat ratio" to be classified as "clinical albuminuria." ECF 390-5 at 3.

Defendant explains that in April 2024, he signed a "medical treatment refusal form." *Id.* at 6. But, he characterizes it as a "dumb decision" because of his "irrational assumption that one of his kidneys was going to be removed, which was not the case at all." *Id.* He adds that he "has requested to be seen and treated by [an] external nephrology specialist as soon as possible." *Id.*; *see also* ECF 390-6.

Harris's medical records also reflect that in December 2020, he was infected with COVID-19. ECF 303. And, Harris maintains that he is now suffering from post-COVID symptoms, including sharp pains in his kidneys, high blood pressure, and dizzy spells. ECF 313 at 4, 5.

U.S.S.G. § 1B1.13(b)(1) is titled "Medical Circumstances of the Defendant." Harris does not identify any provision that he claims applies to him. But, his assertions appear to implicate U.S.S.G. §§ 1B1.13(b)(1)(B), (C), which provide that an extraordinary and compelling reason for compassionate release exists if:

(B) The defendant is—

(i) suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

As indicated, Harris details one instance when the BOP medical staff was unable to fulfill his entire prescription because he had not placed an order. *See* ECF 390. But, he acknowledges that he was still provided with one week's worth of one of his prescriptions. *Id.* at 4. And, although

Harris contends that his kidney disease has worsened, *id.* at 11, there is no evidence that, overall, the BOP is failing to monitor and manage his medical conditions.

Notably, in December 2020, in connection with defendant's prior compassionate release motion, the Court considered Harris's medical diagnoses, including kidney disease, hypertension, prediabetes, and his bout with COVID-19. *See* ECF 304 at 18–20. I determined that, based on defendant's various and serious health conditions, he established an extraordinary and compelling reason for compassionate release. *Id.* at 20. And, upon consideration of the sentencing factors in 18 U.S.C. § 3553(a), I concluded that a sentence reduction was appropriate. *Id.* at 29.

I see no reason to revisit my eligibility determination. Defendant is, indeed, eligible for compassionate release, based on his serious medical conditions. The question is whether the record since my last ruling warrants a further reduction in defendant's sentence. In this regard, I must consider the § 3553(a) factors. These factors are discussed, *infra*.

### b. Career Offender

Intervening changes in sentencing law may constitute extraordinary and compelling reasons that justify a motion for sentence reduction. *Concepcion*, 597 U.S. at 500; *accord United States v. Smith*, 379 F. Supp. 3d 543, 546 (W.D. Va. 2019) ("Congress, when drafting the First Step Act in 2018, surely did not intend for courts to disregard the . . . years of Supreme Court federal sentencing jurisprudence."). And, "a change in career offender status, and a consequent change in the appropriate Guidelines sentencing range, can qualify as an extraordinary and compelling reason warranting compassionate release." *United States v. Elzey*, JKB-09-0288, 2022 WL 316717, at *3 (D. Md. Feb. 2, 2022); *see also United States v. McNeill*, RDB-03-33, 2024 WL 1442195, at *3 (D. Md. Apr. 3, 2024). Moreover, "the finding of extraordinary and compelling reasons, as always, remains 'the product of [an] individualized assessment[ ] of each defendant's

sentence' including 'full consideration of the defendants' individual circumstances.'" *Elzey*, 2022 WL 316717, at *3 (quoting *McCoy*, 981 F.3d at 286).

Two provisions of the Sentencing Commission's amended policy statement — § 1B1.13(b)(6) and § 1B1.13(d)—are pertinent. Section 1B1.13(b)(6) provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

Section 1B1.13(d) provides that "rehabilitation of the defendant is not, by itself," a sufficient reason to grant a motion for compassionate release, but it "may be considered in combination with other circumstances." *See Crawley*, 2025 WL 1634789, at *3.

At sentencing, Harris was deemed to be a career offender, pursuant to U.S.S.G. § 4B1.1, based on two convictions for burglary and one conviction for daytime housebreaking. ECF 297-4, ¶ 131. Under U.S.S.G. § 4B1.1(a)(3), a person qualifies as a career offender if the instant offense of conviction is a "controlled substance offense" or a "crime of violence," as defined in U.S.S.G. § 4B1.2(a) and (b), and the offense was committed after the age of 18. The defendant must also have two prior and distinct qualifying felony convictions, for either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a); *see* § 4B1.2(c); *see also Crawley*, 2025 WL 1634789, at *5.

Under U.S.S.G. § 4B1.2(a), the term "crime of violence" means:

[A]ny offense under federal or State law, punishable by imprisonment for a term exceeding one year, that –

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a

firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

The offenses on which the defendant's career offender designation was based were not proper predicates. Notably, in 2016, the Sentencing Commission amended the Guidelines by deleting "burglary of a dwelling" from the list of enumerated offenses. *See* U.S.S.G. § 4B1.2(a), Amendment 798. Moreover, if sentenced today, the defendant's predicate convictions would not be considered crimes of violence under U.S.S.G. § 4B1.2(a). *See United States v. Al-Muwwakkil*, 983 F.3d 748, 762–64 (4th Cir. 2020) (finding defendant's burglary conviction does not qualify as a violent felony under the Armed Career Criminal Act); *see also United States v. Runyon*, 994 F.3d 192 (4th Cir. 2020) (analyzing crimes of violence under 18 U.S.C. § 924(c)(3)).

But, I addressed this error in December 2020, in connection with defendant's prior compassionate release motion. I expressly concluded that "Harris was erroneously deemed a Career Offender." ECF 304 at 27; *see id.* at 25. And, of import, I considered this error to "be relevant under § 3553(a)." *Id.* at 26. In other words, I took this error into account in reducing defendant's sentence.

In my prior opinion of December 30, 2020, I said, in part, *id.* at 25: "Curiously, the parties do not address Harris's Career Offender status. But, it seems clear to me that Harris would not qualify today as a Career Offender. This is a matter that I may consider." Further, I said, *id.* at 26–27: "And, in my view, an error in the designation of Career Offender status would be relevant under § 3553(a). *See, e.g.*, *United States v. Royster*, __ F. Supp. 3d __, 2020 WL 7392801, at *3-4 (M.D.N.C. Dec. 10, 2020) (considering that defendant would no longer qualify as career offender under §4B1.1 in § 3553(a) evaluation); *United States v. Hickman*, CCB-07-261, 2020 WL 6393391, *4 (D. Md. Nov. 2, 2020) (same); *United States v. Lee*, DKC-12-0493, 2020 WL

4053352, *4 (D. Md. Jul. 20, 2020) (considering the "'changed landscape when considering the goals of sentencing'").

### 3. Criminal History Calculation

As part of his Compassionate Release Motion, Harris advances several arguments related to the calculation of criminal history points, and thus his sentencing Guidelines. These arguments do not fall neatly under the umbrella of extraordinary and compelling reasons. *See* U.S.S.G. § 1B1.13(b)(1)–(6). Nevertheless, in that context, I address Harris's various arguments.

Criminal history points are calculated, in part, as follows: U.S.S.G. § 4A1.1(a) requires three points to be added "for each prior sentence of imprisonment exceeding one year and one month." U.S. Sentencing Guidelines Manual § 4A1.1(a) (U.S. SENTENCING COMM'N 2018). Section 4A1.1(b) "[a]dd[s] 2 points for each prior sentence of imprisonment of at least sixty days not counted in subsection (a)." *Id.* § 4A1.1(b). Section 4A1.1(c) "[a]dd[s] 1 point for each prior sentence not counted in subsection (a) or (b), up to a total of 4 points for this subsection." *Id.* § 4A1.1(c).

When calculating a defendant's criminal history score under the Guidelines, "[s]entences for expunged convictions are not counted . . . ." *Id.* § 4A1.2(j). However, at the time of sentencing, defendant had no expungements. Defendant's expungements post-date his sentencing. And, as discussed, *infra*, the expungements obtained by defendant do not reduce his criminal history score.

As I have said, if defendant were sentenced today, he would have fewer criminal history points than were calculated in the original PSR. As discussed, he would receive only one point, not two, for being under supervision when the underlying offenses occurred. *See* U.S.S.G. § 4A1.1(e). And, so called "recency points" have been eliminated. In addition, in the Second

Amended PSR, no points were assigned for a prior theft offense.  ECF 393, ¶ 15.  But, of import, even with these adjustments, defendant's criminal history category remains a VI.

### a.    Career Offender

According to Harris, because he does not qualify as a career offender, this "can only suggest that petitioner's criminal history category (CHC) is no longer at category 6, for which petitioner can only be designated as a career offender under category 6."  ECF 387 at 2.  In other words, Harris concludes that, because the status of a career offender requires a criminal history category of VI, his criminal history category cannot be VI because he is not a career offender. ECF 388 at 5.  But, this assertion is plainly wrong.  A defendant can have a criminal history category of VI based on criminal history points, even without being a career offender.  In other words, there is more than one route to a criminal history category of VI.

A defendant who qualifies for an enhancement as a career offender "*may be subject* to an increased guidelines offense level and criminal history category, which would result in an increased advisory Guidelines range."  *United States v. Furlow*, 928 F.3d 311, 314 (4th Cir. 2019), *vacated on other grounds*, 140 S. Ct. 2824 (2020) (citing U.S.S.G. § 4B1.1(b)) (emphasis added). Here, as stated several times, the PSR originally determined that Harris had seventeen criminal history points, which established a criminal history category of VI.  ECF 297-4, ¶ 130. Defendant's status as a career offender also gave him a criminal history category of VI.  *Id.* ¶ 131. However, even with the recalculation of defendant's criminal history score to thirteen criminal history points, that score establishes a criminal history category of VI.  ECF 393, ¶ 102.

### b. Prior Record

Harris contends that he was never convicted of one of the predicate offenses listed in the PSR: "Burglary – intent to steal night." ECF 313 at 2–3. But, this does not affect his criminal history category.

According to a letter that Harris enclosed, from the Chambers of Colleen A. Cavanaugh of the Circuit Court for Baltimore County, dated July 19, 2018 (ECF 313-1), Harris was convicted of "Daytime Housebreaking," not "Burglary – Intent to Steal, Night." *Id.* at 1. The letter also enclosed Harris's commitment record and original charging document, confirming the error, which defendant attached to his submission to this Court. *See id.* at 2–4. The commitment record shows a charge of daytime housebreaking in December 1994. *Id.* at 2. The Second Amended PSR has been corrected to describe the conviction as "Burglary-Daytime Housebreaking." *See* ECF 393, ¶ 97.

Defendant also contends that he "was scored twice for the same offense," in what is listed in his original PSR as the 1992 offenses. ECF 366 at 6. Harris contends that there is "no existing case number 292317001." *Id.*

The government "reviewed a copy of the Petitioner's criminal history, in addition to contacting the Circuit Court of Baltimore City's Clerk's Office to inquire about case number 292317001." ECF 385 at 18. According to the government, it "was unable to find a record of this conviction," although it maintains that "the PSR was prepared 22 years ago and it is possible that such records no longer exist." *Id.*

In any event, in the Second Amended PSR the U.S.P.O. did not assign any points for this theft conviction. *See* ECF 393, ¶ 95. Therefore, on this basis, defendant's criminal history score was reduced by two points. *Compare* ECF 297-4, ¶ 130 *with* ECF 393, ¶ 102. In other words,

defendant received the adjustment that he has requested.  But, the deduction does not affect the defendant's criminal history category.

### c. Expungements

Harris argues that some of his prior convictions have been expunged.  On this basis, Harris contends that he is entitled to a further reduction in the calculation of his criminal history points.

In April 2024, Harris notified the Court that two of his previous convictions, one for daytime housebreaking and one for unauthorized use and malicious destruction, have been expunged.  ECF 368 at 1; *see* ECF 297-4, ¶¶ 123, 126.  And, in his compassionate release motion filed on May 21, 2024 (ECF 369), he argues that with the expungement of two of his prior convictions, combined with the reduction of criminal history points pursuant to Amendment 821, he would have ten criminal history points, rather than the seventeen points listed in his PSR.  *Id.* at 6; *see* ECF 297-4, ¶ 130.  Therefore, he asks the Court to resentence him accordingly.  ECF 369 at 6.

Defendant repeats these arguments in his amended motion pursuant to 18 U.S.C. § 3582(c)(2).  ECF 376.  And, in his amended motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF 383), Harris asks the Court to recognize that two convictions were expunged by the State of Maryland.  *Id.* at 2.  He also seeks the amendment of his PSR to reflect the deductions of six criminal history points related to these expunged convictions, resulting in a total of only ten criminal history points.  *Id.*

By letter of March 13, 2025, Harris again wrote to the Court with respect to expungements of three of his State criminal convictions.  ECF 397.  Defendant asserts that he was assigned two points for case no. 292317001, three points for case no. 292150009, and three points for case no. 395265005, and all three convictions have since been expunged.  *Id.* at 2.  According to Harris,

this means that his criminal history points should be reduced either to seven, resulting in a criminal history category of IV, or five, resulting in a criminal history category of III. *Id.* at 3.

In Maryland, an individual who meets certain criteria can petition the court for expungement of his criminal convictions. *See* Md. Code (2018 Repl. Vol.), § 10-110 of the Criminal Procedure Article ("C.P."). For convictions for first and second burglary and theft under the general theft provisions, a defendant who "satisfies the sentence or sentences imposed for all convictions for which expungement is requested, including parole, probation, or mandatory supervision," may have his conviction expunged, no less than ten years after the conviction. *Id.* § 10-110(c)(6).

In determining whether a conviction is expunged for the purposes of U.S.S.G. § 4A1.2(j), "[t]he majority of Courts of Appeals to consider the issue have found that 'expungement within the meaning of the Guidelines's structure is best determined by considering whether the conviction was set aside because of innocence or errors of law.'" *Robinson v. United States*, CCB-18-685, 2020 WL 5074408, at *2 (D. Md. Aug. 25, 2020) (quoting *United States v. Nelson*, 589 F.3d 924, 925 (8th Cir. 2009)) (collecting cases). Other courts in this Circuit have determined that "a state's use of the term 'expunge' is not controlling in determining whether a conviction is properly included in calculating a defendant's criminal history category." *United States v. Singleton*, 624 F. Supp. 2d 520, 527 (W.D. Va. 2009) (quoting *United States v. Hines*, 133 F.3d 1360, 1363 (10th Cir. 1998)); *see also United States v. McCullers*, 704 F. Supp. 3d 659, 665 (E.D. Va. 2023). A conviction is considered expunged when "calculating criminal history points only if it was expunged pursuant to 'constitutional invalidity, innocence, or errors of law.'" *McCullers*, 704 F. Supp. 3d at 665 (quoting *Singleton*, 624 F. Supp. 2d at 527).

For example, in a case in the Sixth Circuit, a defendant made a similar argument concerning reduction of criminal history points after convictions were expunged. The defendant argued that "two criminal history points should have been removed from her criminal history score after she provided evidence that three of her state convictions had been expunged." *United States v. Sturgill*, 761 F. App'x 578, 582 (6th Cir. 2019). The court explained that "Kentucky's expungement procedure does not demand a showing of innocence or legal error." *Sturgill*, 761 F. App'x at 582 (citing Ky. Rev. Stat. § 431.078). Moreover, the court stated that "Owens offered nothing at sentencing to show that such considerations led to the expungements in her case. Once the government proved the existence of the prior convictions by a preponderance of the evidence, *see United States v. Warwick*, 149 F. App'x 464, 467 (6th Cir. 2005), it became Owens's burden to show that the convictions could not be used to determine her criminal history score." *Sturgill*, 761 F. App'x at 582. The court concluded that Owens "failed to meet that burden," and therefore, "the district court did not abuse its discretion by using these state convictions to calculate Owens's criminal history score." *Id.* at 583.

In *McCullers*, 704 F. Supp. 3d 659, the court considered whether the defendant's juvenile offense was expunged under Virginia law for the purposes of a sentence reduction through compassionate release. *Id.* at 665. The court reasoned that under Virginia law, "records of certain juvenile proceedings shall be automatically destroyed when the juvenile reaches a certain age," and this did not suggest that defendant's offense "was expunged pursuant to invalidity, innocence, or errors of law." *Id.* Therefore, the court concluded that the offense "was not 'expunged' within the meaning that numerous courts have given that word when interpreting U.S.S.G. § 4A1.2(j), and this change of circumstances does not rise to the level of extraordinary and compelling." *Id.*

41

*Robinson*, 2020 WL 5074408, is also instructive.  There, Judge Blake considered whether to resentence a defendant because of the expungement of the probation before judgment he had received in state court, which was used to classify him as a career offender.  *Id.* at *1.  She noted that "Robinson's expungement was based on the fact that he successfully completed probation, not on any fundamental errors with the underlying proceedings."  *Id.* at *2.  As a result, the court concluded that the defendant's expungement was "not an 'expungement' within the meaning of the Sentencing Guidelines."  *Id.*

According to the government, Harris's convictions were expunged pursuant to C.P. § 10-110(c)(6). ECF 385 at 17.  It also asserts that the Circuit Court for Baltimore City entered orders for expungement for both cases, because defendant "satisfied the requirements for expungement of the records pursuant" to C.P. § 10- 110.  *Id.*  But, the government maintains that "the convictions still count towards the Petitioner's criminal history score, as the expungements were not a result of innocence or errors of law, but rather that the Petitioner met the statutory requirements of Md. Code Ann., Crim. Proc. Art. § 10-110 (2018 Repl. Vol.)."  *Id.*  Therefore, the government maintains that Harris "would remain in Criminal History Category VI and his guidelines would not change."  *Id.*

Indeed, Harris does not argue that his expungements were a result of his innocence or errors in law.  He argues only that he has made efforts to "clean up [his] life past and present," including by expunging his prior criminal record.  ECF 386 at 1.  But, as Judge Chasanow recently stated: "It may well be that expungement under Maryland law for successful completion of probation does not qualify as 'expungement' for guideline purposes."  *United States v. Hopkins*, DKC 20-248-2, 2025 WL 987444, at *3 (D. Md. Apr. 2, 2025) (citing *Robinson*, 2020 WL 5074408, at *2).  That is the circumstance here.

A comment to the sentencing Guidelines states: "A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, *e.g.*, in order to restore civil rights or to remove the stigma associated with a criminal conviction. Sentences resulting from such convictions are to be counted. However, expunged convictions are not counted. § 4A1.2(j)." *Id.* § 4A1.2 cmt. n.10; *see also United States v. Rydle*, No. 2:19-CR-00073-JAW, 2020 WL 4060771, at *3 (D. Me. July 20, 2020). And, "[s]entencing guideline application notes are authoritative unless they violate the Constitution or a federal statute or are inconsistent with the guideline." *United States v. Dobovsky*, 279 F.3d 5, 7 (1st Cir. 2002) (citing *Stinson v. United States,* 508 U.S. 36, 38 (1993)). Again, when defendant was sentenced, there were no expungements for the Court to consider.

For all these reasons, I conclude that the expungements in issue do not serve as a basis to reduce the calculation of Harris's criminal history points.

### d. Calculations

By letter of February 5, 2025 (ECF 392), the Court wrote to Harris to address a then recent communication from him. *See* ECF 391. The Court informed Harris that "an Amended Presentence Report was docketed on August 28, 2024," which showed that Harris "no longer qualif[ies] as a career offender." ECF 392 at 1 (citing ECF 380). However, I told Harris that, upon my review of the First Amended PSR, I "determined that it did not take into account two changes in the Guidelines that pertain to criminal history points." *Id.* at 1 (citing ECF 380, ¶¶ 104, 105).

In particular, I explained that, under today's sentencing Guidelines, these changes would result in a score of thirteen criminal history points. ECF 392 at 1; *see also* ECF 393, ¶ 101. But,

43

I indicated that this still equates to a criminal history category of VI. ECF 392 at 1; *see also* ECF 393, ¶ 102. In addition, I told the defendant that the U.S.P.O. did not account for both of defendant's convictions under 18 U.S.C. § 924(c). ECF 392 at 1.

Accordingly, I asked the U.S.P.O. to correct the error. *Id.* And, in fact, a Second Amended PSR was docketed on February 14, 2025, reflecting the corrections. *See* ECF 393.

In my letter to defendant of February 5, 2025, I also stated, ECF 392 at 2: "Collectively, the Guidelines for Counts Two, Four, Six, Eight, Ten, Twelve, Fourteen, Sixteen, Eighteen, Twenty, and Twenty-Two are 210 to 262 months. The sentence I imposed for those counts – 192 months – is well below the bottom of the Guidelines. And, for the gun offenses, the Guidelines correspond to the statutory minimum, *i.e.*, seven years per count, each of which must run consecutive. So, inclusive of two § 924(c) offenses, your total Guidelines range is 378 months to 430 months."

By letter dated February 21, 2025 (ECF 394), Harris responded to the Court's letter of February 5, 2025. He again disputed the calculation of his criminal history points. *Id.* Noting that he no longer qualifies as a career offender, and that the "predicate offenses where [sic] not crimes of violence," he asked if the points assigned to the predicates still count in his criminal history point calculation. *Id.* at 2. Further, Harris maintains that one "recency point" and one "status point" must be removed from the thirteen criminal history points, giving him a total of eleven criminal history points. *Id.* at 4. Therefore, he asks the Court to "revisit [his] amended PSR" and to "correct all errors to reflect what [his] Guidelines would be in 2025." *Id.* at 5.[14]

---

[14] In another recent filing, Harris complained that his PSR has not been amended. ECF 391 at 8. He claims that this affects the BOP's calculation of Harris's "security custody range," and therefore the security level of the prison to which he is assigned. *Id.*

Harris sent additional correspondence to the Court dated March 4, 2025.  ECF 396.  He reiterated the same disagreements with the calculation of his criminal history category and sentencing Guidelines.

In the Second Amended PSR, filed in February 2025, defendant received three points for his conviction in 1992 for daytime housebreaking, for which he was sentenced to fifteen months' imprisonment.  ECF 393, ¶ 96.  And, he received three points for his 1994 conviction for "Burglary-Daytime Housebreaking," for which he was sentenced to eight years' imprisonment, with all but eighteen months suspended.  *Id.* ¶ 97.  Also in 1994, the defendant was convicted of "Burglary-Intent/Steal/Night," for which he received an eight-year sentence, with all but eighteen months suspended.  *Id.* ¶ 98.  He received three points for this conviction.  *Id.*  He violated his probation for the offenses referenced in ¶¶ 97 and 98 and, on November 1, 1995, he received concurrent sentences of five years' incarceration.  *Id.*  Then, in 1995, Harris was convicted of unauthorized use and malicious destruction.  *Id.* ¶ 99.  He received a total sentence of five and a half years of imprisonment, consecutive to the sentence imposed for the offense in ¶ 97.  This added three points to his points calculation and resulted in a subtotal criminal history score of 12. *Id.* ¶ 100.  In addition, one point was added because the underlying bank robbery offenses were committed while defendant was on parole for the burglary offenses.  *Id.* ¶¶ 97, 98, 101.  This yields thirteen points.  According to the Guidelines, based on a score of thirteen criminal history points, defendant falls in the criminal history category of VI.  *Id.* ¶ 102.

Turning to the offense level, the Guidelines calculation described in the Court's letter of February 5, 2025 (ECF 392) did not factor in any credit for acceptance of responsibility.  This is not an issue raised by defendant.  But, it is one that the Court has discovered.

As discussed, the original PSR indicated that defendant had a final offense level of 34 for the robbery counts, because his offense level of 32 was subject to a two-point increase due to his career offender status. But, Harris is not a career offender. Therefore, his offense level would be 32, not 34.

The Statement of Reasons (ECF 402) reflects that Harris had a final offense level of 32. It was based on the offense level of 34, due to the career offender designation, minus a two-point deduction for acceptance of responsibility awarded by Judge Nickerson, pursuant to U.S.S.G. § 3E1.1(a). This is reflected in preparation materials located in Judge Nickerson's files and is consistent with the Statement of Reasons. But, because Harris is no longer a career offender, his offense level would be 32, not 34. And, two points for acceptance of responsibility would be deducted from 32, not 34. *Compare* ECF 393, ¶ 91 *with* ECF 297-4, ¶¶ 117, 118. Accordingly, if sentenced today, defendant's final offense level for the robberies would be 30, not 32.

With an offense level of 30 and a criminal history category of VI, the Guidelines for Counts Two, Four, Six, Eight, Ten, Twelve, Fourteen, Sixteen, Eighteen, Twenty, and Twenty-Two call for a period of incarceration ranging from 168 to 210 months.[15] With the addition of two § 924(c) offenses, Harris's total Guidelines range is 336 to 378 months of imprisonment. As discussed, I previously reduced Harris's sentence to a total of thirty years (360 months). That sentence is within the Guidelines, as revised.

Nevertheless, the prior sentence reduction was based primarily on "Harris's health and personal history, the disparity between the sentence imposed before and after trial, and the critical changes in the sentencing landscape that have occurred since 2004," along with the original plea

---

[15] With an offense level of 32, and a criminal history category of VI, the Guidelines are 210 to 262 months.

offer and the factors under 18 U.S.C. § 3553(a). *See* ECF 304. I concluded that the fifty-year sentence was "far 'greater than necessary' to comply with the purposes of incarceration." *Id.* at 29.

Even if Harris's Guidelines range would be lower if sentenced today, that does not require a further sentence reduction. But, for the reasons discussed, in my view, a small sentence reduction is warranted.

### 4. The § 3553(a) Factors

I have said that, based on defendant's medical condition, he has established an extraordinary and compelling reason for compassionate release. And, I previously reduced defendant's total sentence by twenty years, from fifty years to thirty years, taking into account his medical condition, the change in Harris's career offender status, and other factors. Defendant's medical condition has since worsened somewhat. I may also consider the change in defendant's Guidelines. U.S.S.G. § 1B1.13(c); *see also Davis*, 99 F.4th at 654.

But, the Court must also consider the sentencing factors in 18 U.S.C. § 3355(a). These include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

The gravity of defendant's crimes cannot be minimized. Harris "pleaded guilty to robbing no fewer than eleven banks." ECF 385 at 20. Moreover, during "his January 11, 2002 robbery of the First Federal Credit Union, he admitted to abducting a bank employee at gunpoint from his residence, forcibly threatening him and brandishing a shotgun at him. He then forced the employee

to provide access to the bank, where he [sic] an associate committed the robbery.  During the detention of the bank employee, he also used pepper spray on the bank employee and threatened him with a knife." *Id*.  The nature of the crimes weighs against a further sentence reduction.

Yet, on the very same facts that led to the 50-year sentence, the government had previously offered Harris a plea agreement calling for a total of 25 years of incarceration. See ECF 297-4, ¶ 4.

The defendant accepted the plea. Then, Judge Legg allowed the defendant to withdraw his guilty plea and he proceeded to a jury trial. After four days of trial, the defendant again wanted to plead guilty. However, at that point the government offered defendant a 50-year plea deal—a dramatic increase from its earlier plea offer of 25 years on the very same facts.  That sentence was subsequently reduced by this Court to thirty years.  ECF 304, ECF 305, ECF 306.

To be sure, with the original plea agreement, the government undoubtedly considered that, by pleading guilty, Harris spared the government, the Court, and the victims of the ordeal and challenges of the trial process. The victims did not have to recount what they experienced. The government understandably rewards defendants for their acceptance of responsibility and their willingness to avoid the burdens of a trial. Defendant then reneged on his plea agreement and put the government, the Court, jurors, and witnesses through most of a trial. On these facts, it was entirely reasonable for the government to decide that the 25-year deal was no longer an option. But, the fifty year sentence was a heavy price to pay for defendant's change of mind.

To put defendant's current sentence in context, it is worth reviewing the average sentences imposed for certain crimes.  For example, for fiscal year 2023, the average national sentence imposed for murder was 285 months (23 years, 9 months); for robbery, 110 months (9 years, 2 months); and for kidnapping 199 months (16 years, 7 months).  *Table 7, "Sentence Length by Type*

*of Crime,"* at 11, in *Statistical Information Packet, Fiscal Year 2023, District of Maryland*, U.S. SENT'G COMM'N, https://perma.cc/SB5B-CGTA.  Turning to fiscal year 2024, the average national sentence imposed for murder was 274 months (22 years, 10 months); for robbery, 110 months (9 years, 2 months); and for kidnapping 190 months (15 years, 10 months).  *Table 7, "Sentence Length by Type of Crime,"* at 11, in *Statistical Information Packet, Fiscal Year 2024, District of Maryland*, U.S. SENT'G COMM'N, https://perma.cc/UBA6-337E.  And, for fiscal year 2024, in the District of Maryland, the average sentence for murder was 273 months (22 years, 9 months), and for robbery, 130 months (10 years, 10 months).  *Table 7, "Sentence Length by Type of Crime,"* at 11, in *Statistical Information Packet, Fiscal Year 2023, District of Maryland*, U.S. SENT'G COMM'N,  https://perma.cc/UBA6-337E.   In this case, defendant committed multiple armed robberies.

The second § 3553(a)(1) factor—defendant's personal history—is troubling and weighs against further reduction of sentence.  As reviewed earlier, Harris had garnered an extensive criminal history over a short time frame.  *See* ECF 393, ¶¶ 95–99.  Nevertheless, all of Harris's previous convictions occurred between 1992 and 1995, when he was between the ages of seventeen and twenty.  *See McCoy*, 981 F.3d at 288 (noting that courts often consider a defendant's relative youth at the time of their offense as relevant in analyzing compassionate release motions).  And, none of the prior offenses involved violence.  ECF 393, ¶¶ 95–99.  On the other hand, defendant's prior interactions with the criminal justice system, including periods of incarceration, did not deter him from engaging in the serious criminal conduct that culminated in his prosecution in this case.

In his Motion, Harris maintains that he has given "23 years of hard labor for said crimes on bank robbery" and he is "absolutely tired of this."  ECF 375 at 3.  He claims he has heard or

watched sixty-five percent of his family pass away and "kids don't know" him. *Id.* at 3.[16] And, after the conclusion of the sentence imposed by this Court, Harris contends that he must also serve a "consecutive 27-month sentence" for conspiracy to escape federal custody from the U.S. District Court for the Western District of Virginia. ECF 386 at 2; *see also United States v. Harris*, No. 3:03-CR-00056, 2021 WL 388441, at *1 (W.D. Va. Feb. 3, 2021).

Harris also states that since his resentencing, he has "steadfastly maintained a non-violent disposition to all, completed numerous First Step Act (FSA) programming, *i.e.*, drug education, diabetic education courses," even though he is not eligible for FSA credits. *Id.* at 1. And, he contends that he has "maxed out the allowable programming under the risk assessment." *Id*. In addition, Harris details his efforts to "clean up [his] life past and present," including by expunging his prior criminal record, creating a construction-related LLC in Maryland with the help of his family members, improving his credit rating, and continuing to pay his restitution. *Id*.

Rehabilitation efforts should be considered in regard to a motion for compassionate release. *See United States v. Lancaster*, 997 F.3d 171, 175 (4th Cir. 2021) ("And in considering the § 3553(a) factors, the court can take into account a defendant's conduct after his initial sentencing."); *McDonald*, 986 F.3d at 410–12 (noting that on a motion to reduce sentence under the First Step Act, the district court must consider defendant's post-sentencing conduct); *United States v. Randall*, 837 Fed. App'x 1008, 1009 (4th Cir. 2021) ("[A] district court must provide an individualized explanation for denying a sentence reduction motion under the First Step Act when the defendant presents evidence of his post-sentencing rehabilitation."); *United States v. Rudisill*,

---

[16] Harris does not clarify whether he is referring to his own children or other children in his family. Defendant's Second Amended PSR (ECF 393) does not mention whether he has children, but the characteristics listed are limited because he was "unavailable for a presentence report interview." *Id.* ¶ 105.

834 Fed. App'x 827, 829 (4th Cir. 2021) (finding district judge abused his discretion in denying motion under the First Step Act without addressing defendant's post-sentencing conduct).

A defendant's behavior while in BOP custody is an important indicator of whether he remains a danger to the community. See 18 U.S.C. § 3582(c)(1)(A)(ii). But, "rehabilitation alone cannot constitute an extraordinary and compelling reason for release." *See United States v. Davis*, No. 21-6960, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022); *see also Crawley*, 2025 WL 1634789 at *2.

Nevertheless, where appropriate, the district court "must account not only for the circumstances at the time of the original offense but also for significant post-sentencing developments." *Mangarella*, 57 F.4th at 203; *see Martin*, 916 F.3d at 397; *Kibble*, 992 F.3d at 334 n.3. Indeed, courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). The court must "at least weigh the [defendant's] conduct in the years since the[] initial sentencing[]." *McDonald*, 986 F.3d at 412; *see Martin*, 916 F.3d at 397 (requiring an "individualized explanation" as to rehabilitative efforts).

Harris submitted documents from the BOP showing his recidivism risk assessment, dated August 28, 2023. ECF 366-2. It indicates that in the previous ten years, Harris had thirteen incident reports, seven of which were serious. *Id.* at 5. But, it also shows that it had been fifteen months since the last incident report, and fifty-eight months since the last serious incident report. *Id*. The government does not reference any more recent incident reports. *See* ECF 385.

Defendant has served approximately twenty-three years of imprisonment. But, in my view, the period of incarceration that Harris has served to date, even with his efforts at rehabilitation, do

51

not justify a further sentence reduction of five years, as he requests.  As I see it, a five-year reduction of defendant's sentence would not promote respect for the law.

However, the First Step Act "does not constrain the Court to decide between immediate release or no reduction at all, and instead leaves the Court discretion in its evaluation of the appropriate sentence once it finds 'extraordinary and compelling reasons.'"  *United States v. Braxton*, JKB-09-478, 2020 WL 4748536, at *5 (D. Md. Aug. 17, 2020).  Accordingly, the Court's decision need not be confined either to immediate release or leaving the existing sentence intact.  The statutory text of the First Step Act allows courts to "reduce the term of imprisonment" upon a finding of "extraordinary and compelling reasons."  18 U.S.C. § 3582(c)(1)(A).

Numerous district courts in this Circuit and elsewhere have granted sentence reductions without immediate release.  *See, e.g.*, *United States v. Johnson*, RDB-07-0153, 2020 WL 6063733, at *5 (D. Md. Oct. 14, 2020) (reducing sentence from 360 months to 300 months); *Braxton*, 2020 WL 4748536, at *5 (reducing sentence from 246 months to 168 months); *United States v. Marks*, 455 F. Supp. 3d 17, 37–38 (W.D.N.Y. 2020) (reducing sentence from 40 years to 20 years); *United States v. Arey*, Crim. No. 5:05-00029, 461 F. Supp. 3d 343, 2020 WL 2464796 (W.D. Va. May 13, 2020) (reducing sentence but denying immediate release); *United States v. Day*, 474 F. Supp. 3d 790 (E.D. Va. 2020) (same); *see also United States v. Brooker*, 976 F.3d 228, 327 (2d Cir. 2020) ("It bears remembering that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a defendant's prison sentence . . . .").

In particular, this was an extremely serious case, involving multiple armed bank robberies.  However, Harris has certainly made efforts to rehabilitate himself.  I conclude that a further sentence reduction of twelve months is warranted; a total sentence of twenty-nine years is

"sufficient, but not greater than necessary" to comply with the purposes of incarceration.  18 U.S.C. § 3553(a).

## IV.    Conclusion

For the foregoing reasons, I shall grant the Compassionate Release Motion, in part, pursuant to 18 U.S.C. § 3582(c)(1)(A). I shall reduce Harris's sentences for the armed bank robbery charges (Counts Two, Four, Six, Eight, Ten, Twelve, Fourteen, Sixteen, Eighteen, Twenty, and Twenty-Two) from sixteen years (192 months) to fifteen years (180 months), concurrent.  Harris's consecutive sentences of seven years for Count Three and Count Five, respectively, remain unchanged.  This reduces Harris's total sentence to twenty-nine years of incarceration.

An Order follows, consistent with this Memorandum Opinion.


Date: July 3, 2025                                                  _____/s/_____
                                                                             Ellen Lipton Hollander
                                                                             United States District Judge